UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| STEVEN S. GOLD<br>And All Others Similarly<br>Situated,<br>　　　Plaintiffs<br><br>　　　v.<br><br>DANIELS LAW OFFICES, P.C. and<br>HOUSEHOLD BANK (SB), N.A.<br><br>　　　Defendants | Civil Action No.<br>04-12409 NG |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION
TO STAY PROCEEDINGS IN FAVOR OF ARBITRATION**

Plaintiff, Steven S. Gold (hereinafter "Plaintiff" or "Gold") and a potential class of Massachusetts consumers who are similarly situated (collectively "Plaintiffs"), hereby oppose the Motions to Stay Claims in Favor of Arbitration ("Motions to Stay") filed by Defendants, Household Bank (SB), N.A. ("Household") and Daniels Law Offices, P.C. ("Daniels") (collectively "Defendants"). While Defendants each filed separate Motions to Stay, the Plaintiffs submit this memorandum in opposition to both Motions to Stay. In support of their Opposition, Plaintiffs state as follows:

**Introduction**

In or about October of 1993, Gold entered into a Cardmember agreement with Household granting Gold access to an unsecured line of credit (the "1993 Agreement"). In October of 1999, Household alleges to have sent an amended Cardmember Agreement (the "1999 Amendment") to Gold, purporting to add a change-in-terms provision to the

1993 Agreement.[1] Household has produced a sample 1999 Amendment.[2] The 1993 Agreement has not been produced by Defendants.

On or about June 26, 2000, approximately seven years after the execution of the 1993 Agreement, Household alleges to have sent a notice, pursuant to the change-in-terms clause contained in the 1999 Amendment, unilaterally adding an arbitration and waiver of jury trial provision to the contract (the "Unilaterally Imposed Arbitration Term"). Household seeks to compel arbitration based upon the Unilaterally Imposed Arbitration Term, and Daniels seeks to piggy-back its Motion to Stay upon the rights Household claims to enjoy.

## Argument

### I. The Arbitration provision is invalid and it was not agreed to by Plaintiff.

Defendants seek to compel the Plaintiff to arbitrate his claims with the National Arbitration Forum ("NAF"), rather than continue this action brought in the United States District Court for the District of Massachusetts. However, jury trials are not possible with the NAF, meaning that any consumer who is compelled to arbitrate must have validly waived his or her Seventh Amendment right to jury trial and the right to adjudication in a judicial forum.

The essence of Defendants' argument is that, by the Plaintiff's acquiescence toexecution the 1993 Agreement, thereafter unilaterally amended by one Defendant to provide a so-called "change-in-terms" provision in the 1999 Amendment, Household has *carte blanche* to unilaterally dictate to its credit card customers its exclusive right to add or change any term it deemed fit, using a form of notification that only in the vaguest of

---

[1] It is unclear from the pleadings whether Defendants allege that the 1993 Agreement had a change-in-terms provision.
[2] See Affidavit of Jory V. Berdan in Support of Household's Motion to Stay.

2

interpretations could be considered fair or Constitutional. Defendants rely upon the Unilaterally Imposed Arbitration Term as an "agreement" by the consumer Plaintiff to waive his right to a jury trial. The Plaintiff believes that the Defendants use the term "agreement" impermissibly dictating a waiver of fundamental rights.

Defendants do not allege, nor can they, that Plaintiff acquiesced to an agreement containing an arbitration term. They merely assert that the later imposition of the term is just as enforceable as its original terms. The United States Court of Appeals for the First Circuit (the "First Circuit") recently held that "[a] party who attempts to compel arbitration must show that a valid agreement to arbitrate exists, that the movant is entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes within the clause's scope." InterGen, N.V. v. Grina, et al., 344 F.3d 134, 142 (1st Cir. 2003). The United States Supreme Court has narrowed the test to "first ask whether the parties *agreed* to submit their claims to arbitration." Green Tree Fin. Corp.-Alabama v. Randolph, 531 U.S. 79, 90 (2000) (emphasis added). In what the First Circuit labeled a "bedrock" principle, it stated that "'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit.'" McCarthy v. Azure, 22 F.3d 351, 354 (1st Cir. 1994), quoting AT & T Technologies, Inc. v. Communications Workers, 475 U.S. 643, 648 (1986). Here, as discussed infra, Household does not have a valid agreement to arbitrate because the Plaintiff never knowingly, voluntarily and intentionally agreed, or even had an opportunity to reject, the term.

### A. What constitutes an "agreement" by the consumer?

Authority is sparse in Defendants' Motions to Stay concerning published cases[3] similar to the instant one, where a sophisticated creditor purports to have obtained an enforceable waiver of a consumer's Seventh Amendment right to jury trial pursuant to a Unilaterally Imposed Arbitration Term added to an earlier-executed contract of adhesion. Instructive is Stone v. Golden Wexler & Sarnese, P.C., 341 F.Supp. 2d 189 (E.D.N.Y. 2004) which held, in invalidating a similar arbitration clause pursuant to a similar change-in-terms provision, that "Federal policy favors arbitration, but not at the price of fairness and common sense." Id. at 192.

Whether a waiver of the right to a jury trial is effective is determined by applying Federal law. See Simler v. Conner, 372 U.S. 221, 221-22 (1963); InterGen, N.V., 344 F.3d at 143.[4] The arbitration term in question here fundamentally relies upon the waiver of jury trial, as there is no mechanism for jury trial in an arbitration forum. A Unilaterally Imposed Arbitration Term, such as the one Defendants urge this Court to accept, cannot effect an enforceable waiver of the Seventh Amendment right to a jury trial because such a waiver "must be clearly apparent in the contract and its language

---

[3] The Plaintiff acknowledges those cases that uphold, as a general matter, a unilateral change in terms or conditions, specifically in conjunction with a specific state law, such as the one in place in Nevada. Defendants make much of these cases, and there is no need to recite them here. However, as will be discussed in this Memorandum, it is not Nevada law that governs the instant dispute, but Federal law. It is worth noting that most of the cases cited by Defendants are in a commercial context, and further, most of the consumer cases that are cited involve conspicuous arbitration terms physically present on the document that was signed by the consumer, and in a mortgage context which typically involves some attorney representation of the consumer and negotiation of terms. Those cited decisions that do address arguably similar facts are unpublished, and fail to conduct the inquiry required by cases such as Morgan Guar. Trust Co., and similar cases in the context of a waiver of the right to a jury trial. None have addressed the Constitutional question in more than a summary fashion.

[4] Plaintiffs believe that relying purely upon Massachusetts law would produce the same or similar result as urged in this Memorandum, in that Article 15 of the Massachusetts Bill of Rights guarantees the right to jury trial in civil cases such as the instant. See, e.g., Chase Commercial Corp. v. Owen, 32 Mass. App. Ct. 248, 251 (1992).

must be unambiguous and unequivocal, leaving no room for doubt as to the intention of the parties." Badie v. Bank of America, 67 Cal. App. 4th 779 (1998). Here, the Unilaterally Imposed Arbitration Term (imposed based upon the authority supposedly granted in an earlier unilateral amendment) contained no indication of the consumer's intent to agree to the provision, no indication that the consumer was ever meaningfully informed of the term, and no realistic way to opt out. Accordingly, the Unilaterally Imposed Arbitration Term is unenforceable and unconstitutional in light of the factors enumerated below which are designed to determine whether an enforceable agreement exists.

Further, the existence of Nev. Rev. Stat. 97A.140.4, even if Nevada law were applicable to this inquiry, does not alter the outcome urged here, as a unilaterally imposed term that purports to waive the right to a jury trial is fundamentally different from a change in the annual fee, currency conversion rate, information sharing policies,[5] or other card terms. See id; Stone, 341 F.Supp. 2d at 195. The change-in-terms provision in the 1999 Amendment is, in relevant part, as follows:

Subject to applicable law, we may change or terminate any term of this agreement or add new terms at any time, including without limitation adding or increasing fees, increasing your monthly minimum payment and increasing the rate or amount of finance charge, or changing the method of computing the balance upon which finance charges are assessed.

Plaintiff notes that arbitration is not of the same general kind or class as those enumerated. As this is a contract of adhesion, the drafter, Household, should not be

---

[5] The very same provisions that *preceded* the arbitration term in the alleged mailing Household relies upon.

5

given the benefit of a liberal construction[6] necessary to construe the 1999 Amendment broadly enough to allow the later imposition of an arbitration term.

As noted *supra*, the first element of the test for enforceability is that both parties must have agreed to the arbitration term. With respect to the consumer, integral to any such agreement must be an enforceable waiver of the right to a jury trial. In order to waive the right to a jury trial, such an agreement *with respect to this particular term* must be knowing, voluntary and intentional. See, e.g., National Equipment Rental, Ltd. v. Hendrix, 565 F.2d 255, 258 (2d Cir. 1977); K.M.C. Co. v. Irving Trust Co., 757 F.2d 752, 756 (6th Cir. 1985). Indeed, a presumption exists *against* the waiver of a jury trial. National Equipment Rental, 565 F.2d at 258; Whirlpool Fin. Corp. v. Sevaux, 866 F.Supp. 1102, 1105 (N.D. Ill. 1994). The United States Supreme Court has held that courts must "indulge every reasonable presumption" against the waiver of a jury trial because the right to a jury trial is a fundamental right. Aetna Ins. Co. v. Kennedy, 301 U.S. 389, 393 (1937); see also Luis Acosta, Inc. v. Citibank, N.A., 920 F.Supp. 15, 17 (D. Puerto Rico 1996). Accordingly, "[c]ontract provisions waiving the right are narrowly construed, and the requirement of knowing, voluntary and intentional waiver is strictly applied." Morgan Guar. Trust Co. v. Crane, 36 F.Supp. 2d 602, 603 (S.D.N.Y. 1999).

A fact-sensitive test has been developed. One persuasive opinion stated that "[t]he factors a court must consider in determining whether a contractual waiver of a right to a jury trial was entered into knowingly and voluntarily include: 1) the negotiability of contract terms and negotiations between the parties concerning the waiver provision; 2)

---

[6]Contracts of adhesion should be strictly construed against the drafter. See, e.g., Lechmere Tire & Sales Co. v. Burwick, 360 Mass. 718, 720-21 (1972).

the conspicuousness of the waiver provision in the contract; 3) the relative bargaining power of the parties; and 4) the business acumen of the party opposing the waiver." Morgan Guar. Trust Co., 36 F.Supp. 2d at 604 citing Sullivan v. Ajax Navigation Corp., 881 F.Supp. 906, 911 (S.D.N.Y. 1995).  A similar test has been articulated in a United States District Court within the First Circuit in a commercial context.  See Luis Acosta, Inc., 920 F.Supp. at 18.  The First Circuit has held that the burden of proving waiver rests with the party seeking to enforce the waiver.  Id. See also Smyly v. Hyundai Motor America, 762 F.Supp. 428, 429 (D. Mass. 1991).

In applying the elements of the test set forth by the Court in Morgan to the instant case, it is clear that there was no knowing and voluntary contractual waiver of the right to trial by jury by the Plaintiff.  First, there can be no dispute that the 1993 Agreement, pursuant to which Defendants claim the right to invoke the Unilaterally Imposed Arbitration Term, is a contract of adhesion.  As such, the terms of the credit card agreement, not to mention the 1999 Amendment and the Unilaterally Imposed Arbitration Term, could not be, and were not, negotiated.  The fact that the arbitration term was unilaterally imposed after the 1993 Agreement was signed reinforces the fact that the term could not be negotiated.  Under such circumstances, the facts are more compelling than in those cases where the term was in the original contract between the parties.  One reason is that, if the term was in the original contract, the consumer would have had the option *not* to sign if he or she happened to see and understand the arbitration provision. However, as in the instant case, assuming *arguendo* that the debtor actually saw the amendment, recognized it as something important, understood the terms, the vast majority of consumers would likely have lacked the ability to reject the term.

Assuming that the consumer carried a balance at the time of the Unilaterally Imposed Arbitration Term (and the Plaintiff would look to Defendants to prove otherwise), the average consumer would lack the ability to reject, because if the consumer rejected the term, the account would be in default and terminated,[7] and the full balance of the account would immediately be due and owing at a default rate of interest.[8] Few consumers could afford to pay the entire balance in a lump sum prior to the institution of a default rate of interest. Therefore, only the comparatively wealthy had the means to reject the unilaterally imposed waiver of the consumer's rights. In other words, the very consumers who most desperately needed the protections provided by the right to judge and jury in a consumer contract dispute, were the very same who had no meaningful opportunity to reject the term. Accordingly, there was no agreement for this reason alone.

As to the second prong of the Morgan test, the Unilaterally Imposed Arbitration Term represents the contract manifestation of a wolf in sheep's clothing. Here, it is a purported waiver of fundamental rights disguised as junk mail. Even in the event that a consumer had the financial wherewithal to reject the agreement, only the most savvy and detail-oriented consumer would recognize the Agreement for what it is — an unconditional[9] waiver of the consumer's right to judge and jury. There is little doubt that the average consumer would have regarded the Household communication as "junk

---

[7] Pursuant to the 1999 Amendment, in subparagraph (h) under the heading "DEFAULT AND TERMINATION OF AGREEMENT," it is an event of default if Household receives information that the debtor is "unwilling or unable to perform the terms or conditions of this Agreement."

[8] Under the "Default" heading in the 1999 Amendment, Household claimed the right to terminate credit privileges, change the terms of the account and the agreement, and requiring the debtor to pay the entire account balance immediately.

[9] Of course, Household may choose not to invoke arbitration. However, it purportedly always has the right to do so, and if it does, the consumer, they argue here, lacks the right to object in a court of law.

8

mail." The outside of the mailing, ostensibly sent in June, 2000, contains the usual address information, and the ubiquitous junk mail alert text emblazoned across the face of the envelope: "IMPORTANT INFORMATION FOR OUR CUSTOMERS." If the consumer remained unconvinced of the letter's contents, on the back of the envelope, under the bold, italic, and all-cap heading "***SPECIAL OFFER OPTIONS***" are check boxes allowing the consumer to opt out of future mail solicitations and e-mail "spam" from third parties. If the consumer decided to open the communication, the first thing he or she would notice is the prominent and conspicuous text informing the consumer that "The GM Card gives you the choice" regarding "Special Products and Services" followed by expressions of concern regarding the opportunity to take advantage of the "valuable products and services offered by third parties." The font of the heading for this offer is stylized and exponentially larger than any word in the arbitration provision, which is printed in a tiny font and buried within the text of the communication.

      Perhaps most significant is the fact that although there is a clear and unequivocal method of allowing the consumer to opt out of future mail solicitations and e-mail spam from third parties, there are no instructions as to how to reject the arbitration term, or the potential consequences of such a rejection. Accordingly, not only was the arbitration term inconspicuous and materially overshadowed by other information within the same document, it was not designed to be voluntary.

      As to the third prong of the <u>Morgan</u> test, the Unilaterally Imposed Arbitration Term is a contract of adhesion. The consumer has no bargaining power. However, the reality is much more oppressive than the average consumer adhesion contract as a result

of the facts that: (i) it is a unilateral term added pursuant to an earlier unilateral term;[10] (ii) it is a hidden term; and (iii) the average consumer, including Plaintiff, did not have the opportunity or means to reject.

Finally, in the context of a Unilaterally Imposed Arbitration Term in a contract of adhesion, the Plaintiff submits that Massachusetts courts should utilize the "least sophisticated consumer" standard in determining whether Massachusetts consumers understood the agreement, and therefore "knowingly and voluntarily" agreed to the same. Any other standard would prejudice the process against less sophisticated Massachusetts consumers who may already have been exploited by oppressive contractual terms in credit card agreements. Conversely, Household is one of the leading, and most sophisticated, commercial and consumer lenders in the United States.

Here, the contrast in business acumen between the most experienced of businesspeople and average consumers could not be more apparent. This gulf is the primary reason for the very existence of most consumer protection laws in effect today: to level the playing field so that consumers have *at least the opportunity* to strike a fair bargain. Certainly no less important is the protection of fundamental Constitutional rights. On the other side of the coin, the public policy behind the Federal Arbitration Act is more modestly to "make arbitration agreements as enforceable as other contracts, but not more so." Paul Revere Variable Annuity Ins. Co. v. Kelley, 226 F.3d 15, 25 (1st Cir. 2000). Accordingly, a holding in the instant case that the Unilaterally Imposed Arbitration Term is invalid would uphold the public policy foundations of both laws: consumers can be protected from oppressive and unacknowledged waivers of their

---

[10] Which, significantly, did not authorize the imposition of an arbitration term.

Constitutional rights, while invalidating the arbitration term using standards no more stringent than those used to interpret and enforce ordinary contracts of adhesion.

Furthermore, if the Court were to uphold Household's arbitration provision based upon the change-in-terms clause, then the contract would be illusory, as it would grant Household unbounded authority to unilaterally and materially change the nature of the contract to its sole advantage.  See Stone, 341 F.Supp. at 195; Badie, 67 Cal.App. 4th at 284-85; Perez v. Hospitality Ventures-Denver, LLC, 245 F.Supp. 2d 1172, 1174 (D. Colo. 2003) (and cases cited therein).

### B. Even if the Unilaterally Imposed Arbitration Term were enforceable, it does not apply to Daniels.

In addition to the arguments presented above, which apply equally to Daniels, Daniels also fails under the Green Tree test, because the claims asserted do not fall within the scope of the arbitration term.  The contract here (to the extent it actually existed) was between the consumer and Household.  Although the clause purports to be broad enough to encompass any conceivable dispute that could potentially impact Household, the agreement refers specifically to two parties:[11] Household and the debtor.  In that contracts of adhesion should be strictly construed against the drafter, the contract should not be read to include Daniels, who Plaintiff alleges has committed independently actionable wrongs extrinsic to any contract between the Plaintiff and Household.

The First Circuit has acknowledged that courts should be extremely cautious about forcing arbitration in situations in which the identity of the parties who have agreed to arbitrate is unclear.  InterGen, N.V., 344 F.3d at 143, citing McCarthy v. Azure, 22

---

[11] For example, in the arbitration provision, the disclosure concerning the jury trial waiver states "if either party elects arbitration" and "upon election of arbitration of either party."

11

F.3d 351, 354-55 (1st Cir. 1994).  This reasoning is consistent with the fact that a consumer cannot knowingly, voluntarily and intentionally waive his or her right to a jury trial pursuant to a contract he or she has likely never seen, with respect to a party of whom he or she has never heard.  Intent is the principal criterion for determining whether a third party is a proper beneficiary of a contract to which he is a stranger.  See McCarthy, 22 F.3d at 355; Restatement (Second) of Contracts, § 302.  Although Defendants maintain that the Unilaterally Imposed Arbitration Term benefits any party even remotely connected with the credit card agreement, Defendants have produced no document which would indicate that Plaintiff intended to benefit Daniels.  Daniels further contends that it is an agent of Household, and that "[t]he claims are 'inherently inseparable' because Daniels took over the role of Household in the collection of plaintiff's debt."  Daniels' Memorandum of Law in Support of Motion to Stay at 7.  To the contrary, Plaintiff's Complaint states causes of action that Daniels' conduct violates applicable law as a result of its use of form letters which violate the FDCPA and c. 93A regardless of its relationship with Household.  Daniels' claims also raise other important issues, most significant of which is that the level of agency Daniels describes buttresses a claim of vicarious liability against Household for Daniels' violations of M.G.L. c. 93A.

      C. **Defendants cannot compel arbitration of a public injunction**

The injunctive relief requested by the Plaintiff cannot be resolved through arbitration, even pursuant to a knowing, voluntary and intentional waiver of rights.  Specifically, in Count III, Paragraph 65, of the Plaintiff's Complaint, Plaintiff requests that the Court order Daniels to cease and desist from using the illegal collection practices described in the Complaint.  Injunctive relief in the public interest is inherently

inconsistent with arbitration.  See Broughton v. Cigna Healthplans, 21 Cal. 4th 1066 (1999); Cruz v. PacifiCare Health Systems, Inc., 30 Cal. 4th 303, 307 (2003). Consequently, even if it were in accord with applicable law to enforce the Unilaterally Imposed Arbitration Term, the claim for injunctive relief in the public interest would be beyond the scope of the term.

## Conclusion

For the reasons described herein, the Plaintiff requests that the Court deny the Defendants' Motions to Stay Claims Pending Arbitration.

>Respectfully submitted,
>
>STEVEN S. GOLD
>
>By his attorneys
>
>/s/ Todd B. Gordon
>Stephen F. Gordon (BBO No. 203600)
>Todd B. Gordon (BBO No. 652482)
>Gordon Haley LLP
>101 Federal Street
>Boston, Massachusetts 02110
>Tel:   (617) 261-0100
>Fax:   (617) 261-0789
>email: sgordon@gordonhaley.com
>       tgordon@gordonhaley.com
>
>and
>
>/s/ Steven A. Munson
>PHILIP J. HENDEL, ESQ.
> (BBO# 230080)
>STEVEN A. MUNSON, ESQ.
> (BBO# 657892)
> HENDEL & COLLINS, P.C.
> 101 State Street
> Springfield, MA  01103
> Tel. (413) 734-6411

Dated: February 14, 2005

P:\Clients\Gold\Plead\Opp to mot for stay.doc