UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No:  04-12409 NG

_____
Steven S. Gold                                        )
and all others similarly situated,              )
        Plaintiffs,                               )
                                                              )
v.                                                              )
                                                              )
DANIELS LAW OFFICES, P.C. and      )
HOUSEHOLD BANK (SB), N.A.,           )
        Defendants.                            )
_____)

**THE DEFENDANT, DANIELS LAW OFFICES, P.C.'S, REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO STAY PROCEEDINGS
IN FAVOR OF ARBITRATION**

      The defendants, Daniels Law Offices, P.C. ("Daniels") and Household Bank (SB), N.A. ("Household"), seek a stay of all proceedings so that the claims may be arbitrated.  The plaintiff, Steven S. Gold ("Gold" or "plaintiff), opposes the stay because he claims that the arbitration clause is invalid and unenforceable.  The plaintiff is wrong because under the applicable law, the arbitration clause is valid and enforceable, and the plaintiff unequivocally agreed to the provision.  Daniels adopts and incorporates by reference the arguments made by Household in its Reply Brief and argues further as follows:

      **I.**     **Background**

      This action arises out of efforts by the defendants to collect a $8,688.48 credit card debt. After defaulting in a state court action, the plaintiff brought the present action, alleging sundry

violations of the Massachusetts Consumer Protection Statute, Mass.G.L. c. 93A, the Fair Debt Collections Practices Act, 15 U.S.C. § 1692 et seq., and the Massachusetts Debt Collection Act, Mass.G.L. c. 93 § 49. The defendants both filed motions to stay all claims in favor of arbitration. Gold filed an Opposition to both motions on February 14, 2005. Pursuant to an assented to motion to file Reply Briefs, Daniels now replies to the plaintiff's Opposition and asserts that the plaintiff's arguments against arbitration are unfounded.

Daniels argued in its opening memorandum that, based on the plaintiff's contract with Household, the plaintiff's claims were subject to binding arbitration. (See Daniels' Memorandum of Law In Support Of Its Motion to Stay In Favor Of Arbitration ("Daniels' Memorandum") at p. 4). Further, Daniels asserted that, because it took over the role of Household in the collection of the plaintiff's outstanding debt, the arbitration provision equally applied to any claims the plaintiff asserted against Daniels resulting from this relationship. (See Daniels' Memorandum at p. 4). Daniels, a Boston law firm, represented Household in the underlying debt collection case. Opposing the motions, the plaintiff argues that the arbitration agreement between the parties was invalid because the plaintiff did not agree to it and it was not a valid waiver of the plaintiff's Seventh Amendment right to a jury trial. (See Plaintiff's Memorandum In Opposition To Defendants' Motion To Stay Proceedings In Favor Of Arbitration ("Plaintiff's Opposition") at p. 2). In addition to arguing against the enforceability of the arbitration clause, the plaintiff specifically argues against the clause's applicability to Daniels. (See Plaintiff's Opposition at p. 11-13).[1] For the reasons set forth in Daniels' opening

---

[1] For the full text of the applicable arbitration provision, please see Daniels' Memorandum at p. 2-3.

memorandum and those set forth below, the arbitration agreement is valid and enforceable, and it equally applies to the claims asserted by the plaintiff against Daniels.

## II. The Arbitration Provision Is Valid And Enforceable

### A. Nevada Law Governs This Action

As a preliminary matter, the plaintiff incorrectly asserts that this matter should be resolved based on federal law rather than Nevada law. Whether the parties agreed to arbitrate a certain matter is an issue governed by ordinary state-law principles concerning the formation of contracts. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995) (citations omitted); see also Webb v. Investacorp, Inc., 89 F.3d 252, 258 (5th Cir. 1996) (citations omitted); Stone v. Golden, Wexler & Sarnese, P.C., 341 F. Supp. 2d 189, 192 (E.D.N.Y. 2004); Badie v. Bank of America, 67 Cal. App. 4th 779, 787 (1998). A reasonable choice of law provision in a contract should be respected. See McCarthy v. Azure, 22 F.3d 351, 356, n.5 (1st Cir. 1994) citing Restatement (Second) of the Conflict of Laws § 187 (1971). Under these principles, Nevada law applies.

According to the credit card agreement between Household and the plaintiff, the agreement and the plaintiff's account were to be governed by "federal law and the laws of the state of Nevada." Questions of the enforceability of a contract provision traditionally are governed by state law. See e.g., First Options of Chicago, Inc., 514 U.S. at 944; Webb, 89 F.3d at 258; Stone, 341 F. Supp. 2d at 192; Lawrence v. Household Bank (SB), N.A., 343 F. Supp. 2d 1101, 1109 (M.D.Ala. 2004); McIntyre v. Household Bank, 216 F. Supp. 2d 719, 722 (N.D.Ill. 2002). Therefore, the question whether the parties had a valid agreement to arbitrate is governed by Nevada contract law. Under Nevada law, the arbitration clause is valid and enforceable.

### B. By Agreeing To The Arbitration Provision, The Plaintiff Waived His Right to a Trial By Judge or Jury

The plaintiff argues that the arbitration provision is invalid because it constitutes an ineffective waiver of the plaintiff's Seventh Amendment right to a jury trial. The argument is a red-herring. There is a critical distinction – ignored in plaintiff's brief – between the waiver of a right to a jury and the waiver of a trial. The plaintiff relies on Morgan Guar. Trust Co. v. Crane, 36 F. Supp. 2d 602 (S.D.N.Y. 1999), which concerns a written waiver of the right to a jury trial and not an arbitration clause.[2] Only in the first situation, waiver of a right to a jury, is the analysis in Morgan implicated. Here, Morgan does not apply.

The plaintiff agreed to the arbitration provision and by doing so he effectively waived his right to a judicial forum and accordingly, a jury trial. Individuals are free to contractually waive their rights as they see fit. Marsh v. First USA Bank, N.A., 103 F. Supp. 2d 909, 921 (N.D.Tex. 2000). The Seventh Amendment is not implicated by a contractual provision that precludes access to an Article III forum. Id. (citations omitted). There is no constitutional right to a civil jury trial outside of an Article III forum. Hawkins v. AID Association for Lutherans, 338 F.3d 801, 808 (7th Cir. 2003) (citations omitted). By agreeing to the arbitration clause, the plaintiff waived his right to a trial by jury and agreed to resolve disputes through arbitration procedures instead. See id.

"[A] valid arbitration provision, which waives the right to resolve a dispute through

---

[2] In Morgan, the court found that the provision waiving the right to a trial by jury met all the requirements, and was valid and enforceable.

litigation in a judicial forum, implicitly waives the attendant right to a jury trial." Marsh, F. Supp. 2d at 921. "The Seventh Amendment does not confer the right to a trial, but only the right to have a jury hear the case once it is determined that the litigation should proceed before a court. If the claims are properly before an arbitral forum pursuant to an arbitration agreement, the jury trial right vanishes." Bank One, N.A., 125 F. Supp. 2d at 834 quoting Marsh, 103 F. Supp. 2d at 921 (citations omitted).

The plaintiff alleges that because the arbitration agreement necessarily waives the right to a jury trial, a heightened level of scrutiny must be applied. However, there is no requirement that an arbitration agreement clearly and unmistakably express the waiver of an individual's rights. Marsh v. First USA Bank, N.A., 103 F. Supp. 2d 909, 921 (N.D.Tex. 2000), citing, Williams v. Imhoff, 203 F.3d 758 (10th Cir. 2000). Since the arbitration clause does not implicate the plaintiff's Seventh Amendment rights, there is no "heightened level of scrutiny" and the entire premise of plaintiff's opposition necessarily fails. See Sydnor v. Conseco Financial Servicing Corp. et al., 252 F.3d 302, 307 (4th Cir. 2001).

In interpreting an arbitration clause, courts must consider the strong federal policy favoring arbitration. Marsh, 103 F. Supp. 2d at 914 (citations omitted). When a court undertakes the interpretation of an arbitration provision, "due regard must be given to federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." Id. quoting Mastrobuono v. Shearson Lehman Hutton, Inc., et al., 514 U.S. 52, 62 (1995). Courts must liberally and broadly construe contractual language concerning the scope of arbitral issues and resolve all doubts as to coverage in favor of arbitration. McIntyre v. Household Bank, 216 F. Supp. 2d at 722 (citations omitted).

      **C.    The Change of Terms Clause And Arbitration Clause Are Valid And Enforceable**

In his Opposition Memorandum, the plaintiff argues that an amendment in 2000 adding the arbitration clause is not valid because he did not "agree" to the amendment. (<u>See</u> Plaintiff's Opposition at p. 6). The plaintiff's argument is wrong. The plaintiff entered into the credit card agreement with Household in 1993. A change of terms clause was added to the contract as an amendment in 1999.[3] In 2000, pursuant to the change of terms provision, Household amended the agreement adding the arbitration clause. For the reasons set forth in the following sections, the amendment adding the arbitration clause is valid and enforceable. Nothing in the original 1993 contract, the 1999 change of terms clause, or the 2000 arbitration clause, supports the plaintiff's arguments.

      **I.    The Arbitration Provision Is Valid And The Plaintiff Agreed To It**

The arbitration provision is valid and courts have consistently held that identical language is valid and enforceable. <u>See</u> <u>e.g.</u> <u>Lawrence v. Household Bank (SB) N.A.</u>, 343 F.

---

[3] The Change of Terms clause provides as follows:

> **CHANGE OF TERMS**
> **SUBJECT TO APPLICABLE LAW, WE MAY CHANGE OR TERMINATE ANY TERM OF THIS AGREEMENT OR ADD NEW TERMS AT ANY TIME. INCLUDING WITHOUT LIMITATION ADDING OR INCREASING FEES, INCREASING YOUR MONTHLY MINIMUM PAYMENT AND INCREASING THE RATE OR AMOUNT OF FINANCE CHARGE, OR CHANGING THE METHOD OF COMPUTING THE BALANCE UPON WHICH FINANCE CHARGES ARE ASSESSED. PRIOR WRITTEN NOTICE WILL BE PROVIDED TO YOU WHEN REQUIRED BY APPLICABLE LAW. CHANGES MAY APPLY TO BOTH NEW AND OUTSTANDING BALANCES. WE MAY ASSIGN YOUR ACCOUNT TO OUR AFFILIATES OR TO SOME OTHER FINANCIAL INSTITUTION AT ANY TIME.**

Supp. 2d 1101 (M.D. Ala. 2004); <u>McIntyre v. Household Bank</u>, 216 F. Supp. 2d 719 (N.D. Ill. 2002); <u>Beneficial National Bank, U.S.A. et al. v. Payton</u>, 214 F. Supp. 2d 679 (S.D. Miss. 2001).

By continuing to use his credit card after receiving notice of the arbitration amendment to the contract and after the amendment took effect, the plaintiff effectively agreed to the arbitration. Nevada law provides that, "[p]arties may mutually consent to enter into a valid agreement to modify a former contract . . . [C]onsent to a modification may be implied from conduct consistent with an asserted modification." See <u>Shea v. Household Bank (SB), National Association</u>, 105 Cal. App. 4th 85, 88 (2003), <u>citing</u> <u>Clark County Sports Enterprises v. City of Las Vegas</u>, 606 P.2d 171, 175 (Nev. 1980); <u>see</u> <u>also</u> <u>Taylor v. First North American National Bank</u>, 325 F. Supp. 2d 1304, 1313 (M.D.Ala. 2004) (holding under Alabama law, use of credit card amounted to assent of terms).

The Nevada Legislature has carved out an exception to the mutuality requirement for contract modifications by allowing credit card companies to unilaterally modify any term or condition of the contract:

> An issuer may unilaterally change any term or condition for the use of a credit card without prior written notice to the cardholder unless the change will adversely affect or increase the costs to the cardholder for the use of the credit card. If the change will increase such costs, the issuer shall provide notice to the cardholder of the change at least 30 days before the change becomes effective.

Nev.Rev.Stat.Ann. § 97A.140.4.

Section 97A.140 also provides that, "A cardholder shall be deemed to have accepted the written terms and conditions provided by the issuer upon subsequent actual use of the credit card." This standard has also been applied to constitute acceptance by the cardholder of an

amendment, such as an arbitration provision. See Shea, 105 Cal. App. 4th at 89; Lawrence, 343 F. Supp. 2d at 1111.

The change of terms clause allowed Household to "change," "terminate" or "add" any term to the agreement at any time. (See footnote 3). Pursuant to the change of terms clause, Household amended the plaintiff's contract, adding the arbitration provision in 2000. Household's conduct in implementing the arbitration clause complied with Nevada law.

### ii. The Plaintiff Could Have Rejected The Arbitration Clause And The Notification Was Sufficient

The plaintiff argues that he could not reject the arbitration provision, because, if he did so, the account would be in default and terminated, and the full balance of the account would be due and owing a default rate of interest. The argument is without merit.

Household provided the plaintiff with ample opportunity to review the arbitration provision and decide whether to reject the provision. The amendment was sent to the plaintiff on June 26, 2000 and did not take effect until September 10, 2000. By continuing to use the card after receiving the notice, and again, after the provision took effect, the plaintiff accepted the arbitration modification.

Contrary to plaintiff's argument, none of the contracts (the original 1993 agreement, the 1999 change of terms clause, or the 2000 arbitration clause) were contracts of adhesion, because the plaintiff had the option of contracting with many other credit card companies and was not forced to contract with Household. The plaintiff is not a captive consumer.

A contract of adhesion is defined as "a standardized contract form offered to consumers . . . on a 'take it or leave it' basis, without affording the consumer a realistic opportunity to

bargain." Burch v. Second Judicial District Court of the State of Nevada, et al., 118 Nev. 438, 442 (2002) (dealing with new homebuyer warranty) quoting Obstetrics and Gynecologists v. Pepper, 101 Nev. 105, 107 (1985).

Nevada courts permit enforcement of adhesion contracts where there is "plain and clear notification of the terms and an understanding consent," and "if it falls within the reasonable expectations of the weaker . . . party." Id. quoting Obstetrics and Gynecologists v. Pepper, 101 Nev. 105, 107 (1985). In this case, the plaintiff received clear notification of the terms and consented. Even if this agreement were construed as an adhesion contract, it still would be enforceable because it was not unconscionable or unfair. See Bank One, N.A., 125 F. Supp. 2d at 830-832; Taylor, 325 F. Supp. 2d at 1314. In general, both procedural and substantive unconscionability must be present for the court to refuse to enforce a contract or clause. Burch, 118 Nev. at 443. In evaluating the issue of procedural unconscionability, courts ask whether the insertion of the arbitration provision was done in a procedurally unfair manner. Bank One, N.A., 125 F. Supp. 2d at 831. As discussed previously, Household implemented the arbitration clause fairly and pursuant to the change of terms clause and Nevada law. In this case, there is also no basis for a claim of substantive unconscionability.

The plaintiff asserts that in determining whether this agreement was a contract of adhesion, the court should utilize the "least sophisticated consumer" standard and that this is the standard used by Massachusetts courts. However, no authority is given for this assertion and the contract is not governed by Massachusetts law; as previously discussed, it is governed by Nevada law.

The plaintiff makes several arguments that the arbitration amendment is unenforceable

because its terms were inconspicuous and would appear to be "junk mail." In fact, the notification sent to the plaintiff indicated on the outside of the envelope that it was "**IMPORTANT INFORMATION FOR OUR CONSUMERS**." The notice on the outside of the envelope, by its size and font, clearly alerted the plaintiff that the correspondence contained "important information." The arbitration clause was in the same font as all of the other language under the "important information" section. The following language in the arbitration clause was the only wording in the document that was in all caps and bolded:

> **THE PARTIES HEREBY KNOWINGLY AND VOLUNTARILY WAIVE THEIR RIGHTS TO LITIGATE SUCH CLAIMS IN COURT BEFORE A JUDGE OR JURY UPON ELECTION OF ARBITRATION BY EITHER PARTY.**

Unlike the situation in Badie v. Bank of America, relied on by the plaintiff, the contract language was unambiguous and unequivocal. See Badie, 67 Cal. App. 4th at 804. The plaintiff's argument that the arbitration clause was "inconspicuous" (Plaintiff's Memorandum at p. 9), is belied by the simple appearance of the correspondence. And, the plaintiff provides not a scintilla of case law to support his argument that the style of notice was somehow ineffective.

The appearance of the arbitration clause complies with applicable law. For example, the United States Supreme Court, in Doctor's Associates, Inc. v. Casarotto, 517 U.S. 681 (1996), struck down a Montana law that required that "[n]otice that a contract is subject to arbitration . . . shall be typed in underlined capital letters on the first page of the contract." Id. at 686. The Court held that Montana's law conflicted with § 2 of the FAA because it conditioned the enforceability of arbitration agreements on compliance with a special notice requirement not applicable to contracts generally. Id. at 687. Montana's statute placing arbitration agreements in a separate

class limited their validity and this statute was preempted by federal law.

Any argument asserted by the plaintiff that the arbitration provision must be conspicuous or presented in a particular way must fail.  See Taylor v. First North America National Bank, 325 F. Supp. 2d 1304, 1312 (M.D.Ala. 2004).  The notice provided to the plaintiff by Household of the arbitration provision was sufficient under the law.

### iii. The Change of Terms Provision Provided For The Addition Of The Arbitration Provision

The plaintiff's 1993 agreement was modified in 1999 to include the change of terms provision and this modification was valid.  According to Nevada law, as mentioned previously, a credit card issuer may unilaterally change any term or condition for the use of the credit card. See Nev.Rev.Stat.Ann. § 97A.140.4.  The Change of Terms provision in the plaintiff's 1999 contract allowed for Household to "add any new terms at any time."  The arbitration provision was a new term consistent with the change of terms provision and Household successfully implemented this provision.

The plaintiff relies on Badie v. Bank of America, 67 Cal. App. 4th 779 (1998), where the court found that the addition of the arbitration clause was outside the intention of the parties because the agreement was only for changes of terms and not for additional terms.  The instant case is distinguishable from Badie because the plaintiff here agreed with Household that it could "add" any new terms at any time pursuant to the change in terms provision and the addition of terms would include that of an arbitration clause.  Additionally, the plaintiff's claims are distinguishable because they are governed by Nevada law, and the plaintiff's claims in Badie were governed by California law, which does not have a statute similar to Nev.Rev.Stat.Ann. §

97A.140.

The plaintiff's reliance on Stone v. Golden Wexler & Sarnes, P.C., 341 F. Supp. 2d 189 (E.D.N.Y. 2004), is likewise misplaced. In that case, the court applied Virginia law, and Virginia does not have a statute analogous to Nev.Rev.Stat.Ann. § 97A.140. The Stone court explicitly distinguished cases where a state statute authorizes credit card companies to make unilateral changes to the credit card agreement. See Stone, 341 F. Supp. 2d at 193.

### III.     The Arbitration Provision Is Equally Applicable To The Plaintiff's Claims Against Daniels

The plaintiff's argument that the claims against Daniels are not covered by the arbitration clause is not correct. The language of the arbitration provision clearly applies to the dispute between the plaintiff and Daniels. The arbitration clause applies to, "Any claim, dispute, or controversy . . . arising from or relating to this Agreement or the relationships which result from this Agreement . . ." (emphasis added).

Regardless of the specific claims asserted by the plaintiff against Daniels, they all originate from the credit card agreement the plaintiff had with Household. Daniels represented Household for the purpose of collecting the outstanding debt owed by the plaintiff to Household. The relationship between Household and Daniels is a relationship that resulted "from this Agreement," as provided in the arbitration clause. As Daniels pointed out in its opening brief, a non-signatory may become a party to the arbitration agreement if there is a close relationship between the two entities involved and the claims are "intimately founded in and intertwined with the underlying contract obligations." See Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc., 10 F.3d 753, 757 (11th Cir. 1993), and cases cited in Daniels' opening brief.

The plaintiff's reliance on Intergen N.V. v. Grina, 344 F.3d 134 (1st Cir. 2003), is misplaced. In Intergen, none of the parties involved in the dispute was a signatory to the arbitration agreement. Here, the plaintiff was a signatory to the arbitration agreement and agreed to be bound by it. And, as with the plaintiff's arguments against Household, the premise of the argument is wrong. The plaintiff argues that the Court should hesitate to enforce the arbitration clause in favor of Daniels because the issue involves the waiver of a right to a jury trial. (See Plaintiff's Memorandum at p. 11-12). Here, however, the arbitration clause does not involve the waiver of a right to a jury trial.

### IV.   Injunctive Relief Is Not Integral To The Purpose Of The Fair Debt Collection Practices Act

The plaintiff asserts that arbitration is not appropriate in this case because he is seeking injunctive relief against Daniels. The cases cited by the plaintiff involve a statute where the language expressly provides for injunctive relief. By contrast, the Fair Debt Collection Practices Act does not provide for such relief and in fact, does not authorize a private remedy for injunctive relief.

Broughton v. Cigna Healthplans of California, 21 Cal. 4th 1066, 1077 (1999), cited by the plaintiff, provides that in order to determine if there is a conflict between the statute and arbitration, one must look to the nature and purpose of the statute. The court in Broughton analyzed a claim brought pursuant to the Consumers Legal Remedies Acts, California Civil Code section 1750, which specifically provides for injunctive relief. The Broughton court concluded that there was a conflict between arbitration and the underlying purpose of the law's injunctive relief remedy. Id. at 1082.

Conversely, injunctive relief is not related to the purpose of the Fair Debt Collection Practices Act ("FDCPA"). Most courts have found that equitable relief is not available to private litigants under the FDCPA. Weiss v. Regal Collections, 385 F.3d 337, 341, n.7 (3d Cir. 2004) (citations omitted). In considering the FDCPA's legislative history, Congress consciously decided to divide available relief. See Zanni v. Lippold, 119 F.R.D. 32, 34 (C.D.Ill. 1988) (denying class certification as to injunctive relief under FDCPA). The Senate Report on the FDCPA provides that the Federal Trade Commission is authorized to seek injunctive relief, but private parties are limited to monetary damages. Id. No private right to injunctive relief should be implied under the FDCPA. See Strong et al. v. National Credit Management Co., 600 F. Supp. 46 (E.D.Ark. 1984) (denying class certification as to injunctive relief under FDCPA).

At this point in the case, Mr. Gold is the sole plaintiff and there has been no action to have a class certified. Gold has made no showing under Fed.R.Civ.P. 23(a) and 23(b)(2) that he and a putative class would be entitled to the relief requested. In fact, he is not entitled to injunctive relief under any of the claims asserted. It would be inequitable to allow the plaintiff to assert a spurious claim for injunctive relief, just so that he may attempt to avoid arbitration. This is particularly true, in the instant case, where injunctive relief is not in any way related to the purpose of the FDCPA.

Moreover, the plaintiff's argument is contrary to the express terms of the arbitration clause. Nothing in the arbitration provision creates an exception for purported injunctive relief. Even if the plaintiff could state a claim for injunctive relief, which he cannot, he has not shown that such a claim could not be arbitrated as well.

In this case, arbitration is clearly not in conflict with the purpose of the statute and the

fact that the plaintiff seeks injunctive relief does not have any effect on the applicability of the arbitration provision.

## CONCLUSION

Based on the foregoing reasons as well as the reasons set forth in its opening brief and at oral argument, the defendants respectfully request that this Court enter an Order staying all claims asserted by the plaintiff in favor of arbitration.

Respectfully submitted,
DANIELS LAW OFFICES, P.C.
By its attorneys,

/s/ Joseph S. Berman
Joseph S. Berman, BBO No.
BERMAN & DOWELL
210 Commercial Street
Boston, MA 02109
(617) 723-9911

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of March, 2005, I filed a copy of the foregoing by electronic means with the United States District Court for the District of Massachusetts using the CM/ECF system, which will send notification to the following, to: Philip J. Hendel, Esq., Hendel & Collins, P.C., 101 State Street, Springfield, MA 01103; Stephen F. Gordon, Esq., Gordon Haley LLP, 101 Federal Street, Boston, MA 02110; Christopher R. Lipsett, Esq. Wilmer Cutler Pickering Hale and Dorr LLP, 399 Park Avenue, New York, NY 10022, and Gabrielle Wolohojian, Esq., Wilmer Cutler Pickering Hale and Dorr LLP, 60 State Street, Boston, MA 02109.

/s/ Joseph S. Berman

Joseph S. Berman