UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| STEVEN S. GOLD<br>And All Others Similarly<br>Situated,<br>        Plaintiffs<br><br>v.<br><br>DANIELS LAW OFFICES, P.C. and<br>HOUSEHOLD BANK (SB), N.A.<br><br>        Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No.<br>04-12409 NG |

**PLAINTIFFS' REQUEST FOR ORAL ARGUMENT**

      Plaintiff, Steven S. Gold (hereinafter "Plaintiff" or "Gold") and a potential class of Massachusetts consumers who are similarly situated, hereby request that this Honorable Court, pursuant to LR 7.1(d), schedule a Hearing regarding the Motions to Stay Proceedings in Favor of Arbitration filed by Defendants, Household Bank (SB), N.A. ("Household") and Daniels Law Offices, P.C. ("Daniels") (collectively "Defendants").   In support of this Request, Plaintiff states as follows:

      In response to Plaintiff's Opposition to Defendants' Motions to Stay Proceedings in Favor of Arbitration, filed with the Court on February 14, 2005, both Defendants have submitted lengthy briefs dated March 8, 2005 (the "Response Briefs"), which beg for further response.  Plaintiff believes that oral argument of the  issues contained in the parties' pleadings will: (i)  provide an opportunity for the Plaintiff, who has limited resources, to respond to the Defendants' positions without exhaustive further pleadings; (ii) assist the Court in sifting through the plethora of legal authority presented by the

parties; and (iii) allow the parties a forum to clarify their respective positions. Plaintiff submits that the following issues, without limitation, support Plaintiff's Request for Oral Argument:

    A. <u>What are the Minimum Standards of Disclosure for an Enforceable Agreement to Arbitrate?</u>  In their Reply Briefs, Defendants argue that a consumer may waive his or her right to a jury trial pursuant to a valid arbitration clause. They provide authority in support of the enforceability of arbitration clauses added pursuant to valid change-in-terms provisions. (<u>See</u> Household's Reply Brief at 5-6; Daniels' Reply Brief at 6-7). Assuming *arguendo* that an arbitration clause may be imposed pursuant to a valid change-in-terms clause, Plaintiff concedes that it is *possible* to waive a right to judge and jury concerning arbitrable issues. Rather, Plaintiff has argued that such a waiver cannot have taken place in this case, given the manner that Plaintiff was informed of the arbitration term. The Plaintiff's objection to the manner and circumstances of Household's disclosure of the term is outlined in the Plaintiff's Opposition, principally that it was disguised as "junk mail." It appears to be a communication about special offers from third parties. A copy of the provision, and a sample copy of the envelope in which the term was mailed, was attached by Household as Exhibit "B" to the Berden Declaration, and, for convenience, the same is reproduced here as Exhibit "A."

    Under the circumstances, the Plaintiff never agreed to the arbitration provision. It is respectfully submitted that a consumer must have a reasonable opportunity to learn the content of a term before he or she may <u>agree</u> to said term. In order for a valid arbitration agreement to exist, the consumer must, at minimum, knowingly and voluntarily manifest assent to the term. To knowingly assent, the term must be

meaningfully communicated to the consumer.  To voluntarily assent, the consumer must have a reasonable opportunity to reject.

Defendants' own cases illustrate this point, focusing on the consumer's ability to opt-out or reject the arbitration term.  Defendants cited, *inter alia*, <u>Bank One v. Coates</u>, 125 F.Supp.2d 819 (S.D. Miss. 2001), and <u>Stiles v. Home Cable Concepts, Inc.</u>, 994 F.Supp.1410 (M.D. Ala. 1998), in support of their position that the Court should enforce Household's arbitration provision, imposed pursuant to a change-in-terms provision.  In <u>Coates</u>, the creditor set forth a clear method for rejecting the arbitration term, allowing the debtor to opt-out of the arbitration provision and continue paying according to the prior terms.  The court explained the stated rejection method at length (<u>Coates</u>, 125 F.Supp.2d at 827-28), and specifically articulated that the presence of the opt-out provision supported the argument that the term was procedurally conscionable (<u>Id</u>. at 831).  The <u>Stiles</u> court used similar logic in finding an arbitration provision enforceable, where the creditor actually lowered the APR when it added the term, and provided that opting-out would reinstate the original APR.  <u>Stiles</u>, 994 F.Supp. at 1413.  Plaintiff believes that <u>Stiles</u> and <u>Coates</u> buttress the argument that Household's arbitration term is procedurally unconscionable.

Notably, in neither case did the Court engage in an analysis of the method of communication of the term.   Daniels asserts that <u>any</u> argument requiring conspicuousness of the arbitration provision must fail. (<u>See</u> Daniels Reply Brief at 11).  This argument could lead to an absurd result.  Using Daniels' reasoning, Household could have printed the arbitration term on the inside of the envelope, and Plaintiff would be bound by the term the very next time he used his credit card.  Could a consumer agree

3

to a judgment for any amount determined by a credit card lender? A lien on assets? An attachment of real estate? There is a certain absurdity once the line of reasonableness is crossed. The general principle in question is that arbitration terms are construed according to ordinary contract principles, and that the term should not be singled out as suspect simply because it is an arbitration provision. It does not require that the lowest acceptable of standard for change of the most mundane credit term apply with equal soundness to a waiver of judge and jury. Unlike the so-called "bill-stuffer" cases, the analysis is different in the context of an arbitration term sent pursuant to a change-in-terms provision, in that the debtor, who is not expecting the new term, must be meaningfully informed of the change. The debtor's *agreement* to waive his or her right to judge and jury must be based upon something more than minimally constructive notification.

      B. <u>The Court's Decision in this Case Will Affect Established Public Policy.</u> The issues presented here are of profound public importance, and oral argument will allow the parties to frame the issues in the context of the duty of the Attorney General ("AG") of the Commonwealth of Massachusetts to monitor and sanction the exploitation of Massachusetts consumers. Massachusetts General Laws c. 93A, § 10 provides that:

> "[u]pon commencement of any action brought under section nine or section eleven, the clerk of the court shall mail a copy of the bill in equity to the attorney general and, upon entry of any judgment or decree in the action, the clerk of the court shall mail a copy of such judgment or decree to the attorney general." M.G.L. c. 93A, § 10.

      The Defendants' Reply Briefs make it clear that <u>any</u> consumer protection violation alleged to have occurred with respect to the conduct of a credit card company[1],

---

[1] Upon information and belief, most or all major credit card issuing banks now have some form of arbitration term.

or any subsequent collector or assignee, must be arbitrated, and cannot be brought or maintained in state or federal court without the consent of the creditor. This would include any action brought pursuant to M.G.L. c. 93, § 49, and M.G.L. c. 93A, §§ 1-11, the Massachusetts Consumer Protection Act.

It is submitted that this case should convey to credit card lenders that there are limitations. It is the AG's duty to protect Massachusetts's consumers from unfair and deceptive practices (See M.G.L. c. 12, § 10; M.G.L. c. 93A, § 10), and the AG does so, in part, by monitoring complaints filed by consumers, and any subsequent judgments that are entered by the courts, concerning alleged 93A claims. This is facilitated by M.G.L. c. 93A, § 10. However, if all consumer complaints concerning credit card companies and collectors are diverted through binding arbitration, the AG is effectively precluded from participation, and Section 10 is rendered meaningless in a debt collection context. Additionally, Household's arbitration provision specifically provides that all arbitration awards shall be kept confidential. Even if a consumer received an arbitration award against a creditor, and wanted to bring the same to the attention of the AG, the consumer could not do so pursuant to the Household term. Accordingly, Household's arbitration term impermissibly usurps the role of the AG, in connection with the Consumer Protection Act, to protect the public from abuse.

C. The Issue of Abuse of Judicial Process is Inarbitrable. In Plaintiff's Complaint, Plaintiff alleges that Household's self-described agent, Daniels, improperly utilized Massachusetts judicial process to improperly threaten to arrest Plaintiff. (See Pl. Compl. at ¶¶ 35-45). The Plaintiff believes that no arbitration forum should be vested

5

with the power to determine whether the judicial process in a Massachusetts court has been abused. Such a determination should be reserved to a Massachusetts court.

For the reasons described herein, the Plaintiff respectfully requests that the Court schedule oral argument on the Defendants' Motions to Stay Claims Pending Arbitration.

    Respectfully submitted,

    STEVEN S. GOLD

    By his attorneys

    /s/ Todd B. Gordon
    Stephen F. Gordon (BBO No. 203600)
    Todd B. Gordon (BBO No. 652482)
    Gordon Haley LLP
    101 Federal Street
    Boston, Massachusetts 02110
    Tel:   (617) 261-0100
    Fax:   (617) 261-0789
    email:  sgordon@gordonhaley.com
            tgordon@gordonhaley.com

    and

    /s/ Steven A. Munson
    Philip J. Hendel, Esq. (BBO No. 230080)
    Steven A. Munson, Esq. (BBO No. 657892)
    Hendel & Collins, P.C.
    101 State Street
    Springfield, MA  01103
    Tel. (413) 734-6411
    Fax:  (413) 734-8069
    email:  phendel@hendelcollins.com
            smunson@hendelcollins.com

Dated: March 22, 2005

## IMPORTANT INFORMATION

The following amendments to your Cardmember Agreement and Disclosure Statement are effective 9/10/2000. Please keep this in a safe place with your Cardmember Agreement and Disclosure Statement.

**ANNUAL FEE**

If your Account has an Annual Fee, you should know that the Annual Fee compensates Household Bank, the issuer of The GM Card, in part, for cardmember services provided or made available to you throughout the membership year which includes but is not limited to the right of the cardmember to access customer care staff, the right of the cardmember to withhold payment of disputed charges; and the processing and mailing of the monthly billing statement.

**FOREIGN TRANSACTIONS**

If you effect a transaction with your MasterCard* in a currency other than U.S. dollars, MasterCard International Incorporated will convert the charge into a U.S. dollar amount. MasterCard International will use its currency conversion procedures, which are disclosed to institutions that issue MasterCard credit cards. Currently the currency conversion rate used by MasterCard International to determine the transaction amount in U.S. dollars for such transactions is generally either a government-mandated rate or a wholesale rate determined by MasterCard International for the processing cycle in which the transaction is processed, increased by an adjustment factor established from time to time by MasterCard International. We increase the currency conversion rate by 2%. The currency conversion rate used on the processing date may differ from the rate that would have been used on the purchase date or cardmember statement posting date.

**INFORMATION SHARING WITH AFFILIATES**

You agree that Household Bank (SB), N.A. ("we" or "us") may share credit information we obtain about you or your Account with persons related to us by common ownership or affiliated by corporate control. You may prohibit the sharing of credit information by writing to us at P.O. Box 81622, Salinas, CA 93912-1622 and including the name, address, social security number, signature, and, if applicable, account number for each person making the election. Your request will not apply to information relating to your transactions or experiences with us.

**ARBITRATION**

You agree any claim, dispute, or controversy (whether based upon contract; tort, intentional or otherwise; constitution; statute; common law; or equity and whether pre-existing, present or future), including initial claims, counter-claims, cross-claims and third party claims; arising from or relating to this Agreement or the relationships which result from this Agreement, including the validity or enforceability of this arbitration clause, any part thereof or the entire Agreement ("Claim"), shall be resolved, upon the election of you or us, by binding arbitration pursuant to this arbitration provision and the applicable rules or procedures of the arbitration administrator selected at the time the Claim is filed. The party initiating the arbitration proceeding shall have the right to select one of the following three arbitration administrators: the National Arbitration Forum ("NAF"), the American Arbitration Association ("AAA") or JAMS. The arbitrator shall be a lawyer with more than ten years experience or a retired or former judge. We agree not to invoke our right to arbitrate an individual Claim you may bring in small claims court or an equivalent court, if any, so long as the Claim is pending only in that court. The rules and forms of the NAF, AAA and JAMS may be obtained by writing to or calling these organizations at the addresses and/or telephone numbers listed below. Our address for service of process under this provision is Household Credit Services, Inc., P.O. Box 98740, Las Vegas, NV 89193-8740.

Any participatory arbitration hearing that you attend will take place in the city nearest to your residence where a federal district court is located or at such other location as agreed by the parties. On any Claim you file, you will pay the first $50 of the filing fee. At your request we will pay the remainder of the filing fee and any administrative or hearing fees charged by the arbitration administrator on any Claim submitted by you in arbitration up to a maximum of $1,500. If you are required to pay any additional fees to the arbitration administrator, we will consider a request by you to pay all or part of the additional fees; however, we shall not be obligated to pay any additional fees unless the arbitrator grants you an award. If the arbitrator grants an award in your favor, we will reimburse you for any additional fees paid or owed by you to the arbitration administrator up to the amount of the fees that would have been charged if the original Claim had been for the amount of the actual award in your favor. The parties shall bear the expense of their respective attorney's fees, except as otherwise provided by law. If a statute gives you the right to recover any of these fees, or the fees paid to the arbitration administrator, these statutory rights shall apply in the arbitration notwithstanding anything to the contrary contained herein. If the arbitrator issues an award in our favor you will not be required to reimburse us for any fees we have previously paid to the arbitration administrator or for which we are responsible.

This arbitration agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, 9 U.S.C. Sections 1 - 16 (the "FAA"). The arbitrator shall apply applicable substantive law consistent with the FAA and provide written reasoned findings of fact and conclusions of law. The arbitrator's award shall not be subject to appeal except as permitted by the FAA. The parties agree that the award shall be kept confidential. Judgment upon the award may be entered in any court having jurisdiction.

This arbitration agreement shall survive termination of your Account as well as the repayment of all amounts borrowed hereunder. If any portion of this arbitration agreement is deemed invalid or unenforceable under any law or statute consistent with the FAA, it shall not invalidate the remaining portions of this arbitration agreement or the Agreement. In the event of a conflict or inconsistency between the rules and procedures of the arbitration administrator and this arbitration agreement, this arbitration agreement shall govern. No class actions or joinder or consolidation of any Claim with the claim of any other person are permitted in arbitration without the written consent of you and us.

**THE PARTIES ACKNOWLEDGE THAT THEY HAD A RIGHT TO LITIGATE CLAIMS THROUGH A COURT BEFORE A JUDGE OR JURY, BUT WILL NOT HAVE THAT RIGHT IF EITHER PARTY ELECTS ARBITRATION. THE PARTIES HEREBY KNOWINGLY AND VOLUNTARILY WAIVE THEIR RIGHTS TO LITIGATE SUCH CLAIMS IN A COURT BEFORE A JUDGE OR JURY UPON ELECTION OF ARBITRATION BY EITHER PARTY.**

You may contact, obtain the arbitration rules of, or file a Claim with NAF, AAA, or JAMS as follows:

| National Arbitration Forum | American Arbitration Association | JAMS |
|---|---|---|
| P.O. Box 50191 | 1150 Connecticut Ave, NW, 6th Floor | 45 Broadway |
| Minneapolis, MN 55405 | Washington, DC 20036-4104 | New York, NY 10005 |
| (800) 474-2371 | (800) 925-0155 | (800) 352-5267 |
| www.arb-forum.org | www.adr.org | www.jamsadr.com |
| Code of Procedure | Arbitration Rules for Consumer Related Disputes (Claims under $10,000). Commercial Arbitration Rules (all other claims). | Financial Services Arbitration Rules and Procedures. |

## The GM Card gives you the choice.

The GM Card makes available to cardmembers like you valuable products and services offered by third parties. However, we recognize that you may not want to receive these kinds of mailings or phone calls.

### SPECIAL PRODUCTS AND SERVICES

The GM Card will not consider a company that won't guarantee total satisfaction. All products and services are offered with complimentary trial periods plus a money back guarantee. If you do not want to receive these special offers, just fill in the form and return to us at the address on the other side, and we'll make sure your name is removed from all future mailings and/or solicitations.*

If you would like to receive these special offers, but have a telephone number or address correction, please notify us of the correction by calling 800-947-1000.

*It may take up to 10-12 weeks to process your reply.

## SPECIAL OFFER OPTIONS

Please check all that apply:

- ☐ Please do not send me direct mail about special offers from third parties.
- ☐ Please do not call me about special offers from third parties.
- ☐ Please do not e-mail me about special offers from third parties.

PLEASE COMPLETE THIS FORM AND RETURN TO:

The GM Card
P.O. Box 80082
Salinas, CA 93912-0082

<Short Account>

The GM Card
P.O. Box 80046
Salinas, CA 93912-0046

PRST STD
U.S. Postage
PAID
Household Bank

## IMPORTANT INFORMATION FOR OUR CUSTOMERS

Sample A. Sample
1234 Any Street
Any Town, ST 12345-0000